FRED PETERS ET UX *v.* CECIL M. HUBBARD AND LARRY
HUBBARD, D/B/A GEORGE HUBBARD & SON, AND NUTRENA
MILLS, INC.

5-4198                                    416 S. W. 2d 300

Opinion delivered June 5, 1967
[Rehearing denied July 26, 1967.]

*M. C. Lewis Jr.* and *William W. Green,* for appel-
lants.

*Wootton, Land & Matthews* and *Clayton Farrar,* for
appellees.

J. FRED JONES, Justice. This is an appeal from the
Garland County Chancery Court wherein Fred and
Nellie Peters were plaintiffs and George Hubbard & Son
and Nutrena Mills, Inc. were defendants. The suit was
first filed in Circuit Court and transferred to chancery.
The plaintiffs sought damages for breach of four inter-
woven and inter-related contracts, two of which were

alleged to be oral and two written. Both of the defendants, the Hubbards and Nutrena, demurred to each of the four causes of action in the complaint, and all the demurrers were sustained by the chancellor. The plaintiffs refused to plead further and standing upon their complaint, as amended, have appealed to this court.

Appellants designate the following as points they rely on:

"I. The court erred in sustaining the demurrer of the defendants-appellees Hubbard.

"A. The complaint as amended stated good causes of action and there was no defect.

"1. For the cause of action, it alleged an oral agreement between the parties, with definite terms, completely performed by Plaintiffs-Appellants, and breached by Defendants-Appellees.

"2. For the second cause of action, it alleged a written agreement, a copy being attached and made a part of the Complaint as an Exhibit performed by Plaintiffs-Appellants, and breached by Defendants-Appellees.

"3. For the third cause of action it alleged a written agreement, a copy being attached and made a part of the Complaint as an Exhibit performed by Plaintiffs-Appellants, and breached by Defendants-Appellees.

"4. For a fourth cause of action it alleged an oral agreement with definite terms, performed by Plaintiffs-Appellants, and breached by Defendants-Appellees.

"II. The court erred in sustaining the demurrer of the Defendant-Appellee Nutrena Mills, Inc.

"A. The Complaint as amended stated good causes of action and there was no defect.

"1. Performance by Defendant-Appellees Hubbard to two oral and two written agreements with Appellants was an original undertaking by the Defendant-Appellee, Nutrena Mills, Inc., who was a third party to each agreement and a beneficiary thereof with substantial benefits therefrom.

"2. The four causes of action were properly alleged as to be discussed under Point I."

It is difficult indeed to determine from the pleadings filed by appellants, where one cause of action stops and another begins.

As near as we can tell, from the entire record, the alleged four separate contracts, on which the four separate causes of action were based, apparently intended to cover the productive life span of chickens in successive flocks of laying hens to be perpetually renewed by culling and replacement. Apparently it was intended that the contracts were to be renewed from time to time and to continue in force until a long-term monthly payment loan from third parties to appellants, made in connection with the construction of the chicken house, was repaid in full.

Apparently recognizing the difficulty in distinguishing one alleged contract from another, the appellants have designated the four separate alleged contracts as four separate causes of action, A, B, C, and D, in their complaint, and we shall so deal separately with each cause here.

More in nature of pointing up the problem than in stating the solution, the complaint, as amended, is set out here in some detail.

Under cause ''A'' the complaint alleges:

''That the plaintiffs, Fred Peters, and Nellie Peters, are owners of real estate known as Route 1, Box 140, Pearcy, Arkansas; that the Defendants are engaged in the poultry, chicken, egg and feed business; that in December of 1962, the Plaintiffs and the Defendants entered into an agreement, for and in consideration of the promises of the Defendants jointly for automatic contract renewals of egg production agreements, and pullet feeding agreements, with the furnishing of feed and chickens by the Defendants, the Plaintiffs entered into an agreement with the Defendants under which the Plaintiffs were to construct a large chicken house with a 6,000 chicken capacity and to purchase equipment including a feeder, which equipment was necessary for the operation of the chicken houses and maintenance of a poultry and egg producing farm; that in reliance upon the promises and agreements of the Defendants, the Plaintiffs borrowed money and mortgaged their property and constructed a 6,000 capacity chicken house at a cost of $3,220.80, not including the labor of the Plaintiff, Fred Peters, which was in addition to the other costs, and purchased a Big Dutchman feeder at a cost of $1,047.81; that in order to do the construction and in order to make the purchase of the equipment, it was necessary for the Plaintiffs to mortgage their home and property and to go in debt with large monthly payments; that the Defendants knew that it was necessary for the Plaintiffs to borrow money for the chicken house construction and the purchase of the equipment, and agreed with the Plaintiffs and represented to them that they would furnish chickens to the capacity of the Plaintiffs' chicken houses and furnish feed and provide an outlet for the eggs and poultry and agreed with the Plaintiffs that the pullet raising and egg production agreements would be automatically renewed.

"That the Plaintiffs were instructed by the Defendants to secure as long financing terms as were possible, that in reliance upon the agreements by the Defendants and those instructions, the Plaintiffs borrowed money on a long-term basis; that the Plaintiffs completely performed by constructing the 6,000 capacity chicken house and purchasing the feeder and equipment necessary for the feeding and raising of poultry and the production of eggs.

"That under the agreement 6,000 chickens to the capacity of the Plaintiffs were to be furnished on January 1, 1963; that the Defendants entered into a partial performance, but did not deliver any chickens until March 2, 1963, and then did not deliver and never have delivered 6,000 chickens to the capacity of the Plaintiffs and in accordance with the agreement.

"That subsequently the Defendants breached individual egg production and pullet raising agreements and completely breached their covenant to automatically renew such agreements; that as a result of the failure to completely perform and as a result of the breach of the Defendants of the agreement with the Plaintiffs, the Plaintiffs have been greatly damaged; that their chicken house has become worthless to their damage in the amount of $3,220.00; that the feeder has become worthless to their damage in the amount of $1,000.00; that as a result of the breach by the Defendants, the Plaintiffs have incurred a net loss of earnings in the amount of $295.00 per month, totaling $13,570.00, after allowing credit for earnings from partial performance by the Defendants. That the Plaintiffs are entitled to recover from the Defendants jointly and severally the total sum of $17,790.00 for the Defendants' breach of contract."

In response to a motion to make more definite and certain, appellants amended this cause of action "A" as follows:

"The Agreement entered into in December of 1962 by and between the Plaintiffs and the Defendant, Nutrena Mills, Inc. and the Defendant, Cecil M. Hubbard and Larry Hubbard, a partnership, d/b/a George Hubbard & Son, was an oral agreement;

"The duration of the agreement was for the length of time it took to clear the cost of construction of the chicken house and to pay for the special feeder equipment, and for the length of time that it took to repay the money and mortgage necessary to construct the chicken house and purchase the equipment; that Plaintiffs specifically performed within one year their original duties under the agreement by purchasing the equipment and constructing the chicken house and obtained long term financing in accordance with the instructions of both Defendants."

The amendment to this cause of action then continued with eight additional lengthy paragraphs relating, primarily, to additional poultry and egg producing contracts and agreements to renew the contracts, and to Nutrena's agreement to guarantee that Hubbard & Son would carry out their agreements. To copy the amendment in full would unduly lengthen this opinion and a full copy is not necessary for a determination of the question before us.

The Arkansas statute of frauds, Ark. Stat. Ann. § 38-101 (Repl. 1962), provides as follows:

"No action shall be brought; . . . to charge any person, upon any special promise, to answer for the debt, default or miscarriage, of another; * * * to charge any person upon any contract, promise, or agreement, that is not to be performed within [1] year from the making thereof; unless the agreement, promise or contract, upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party

to be charged therewith, or signed by some other person by him thereunto properly authorized."

Appellant's cause of action "A," as amended, alleges that the agreement was oral and that its duration was until a long term indebtedness for the chicken house is paid off. This cause of action also alleges that the Hubbards agreed to enter into additional contracts and then the complaint alleges damages for breach of apparently the same contracts appellants allege that appellees agreed to enter into.

We conclude that the complaint in cause of action "A" does not state a cause of action on a contract to be performed within one year and that the chancellor was correct in sustaining the demurrers to this cause of action.

For their cause of action "B" appellants alleged:

"That on the 22nd day of January, 1963, the Defendants entered into a pullet feeding agreement with the Plaintiffs, a copy of which is attached as Exhibit 'A' and made a part hereof as though set out herein word for word. That under said agreement Defendants were to furnish 3,690 pullets on or about January 17, 1963; that in accordance with said agreement, the Defendants were to furnish the Plaintiffs with the necessary feed, grit and poultry medication for the purpose of proper feeding and care of the pullets; that in the agreement it was provided that the pullets were to be cared for and left with the Plaintiffs until they reached twenty weeks of age; that the Plaintiffs were to be paid one cent per bird per week for their services in growing and caring for said birds; that the Plaintiffs fully complied with the agreement, but that the Defendants breached the agreement by failing to comply with said agreement to the Plaintiffs' damage in the amount of $738.00, which Plaintiffs should recover from the Defendants."

By amendment to this cause of action, appellants alleged:

"Defendants, George Hubbard & Son, never delivered the pullets as called for in Exhibit 'A.' "

Exhibit "A" to the complaint on this cause of action is designated "pullet feeding agreement," and although dated January 22, 1963, under its terms appellee, George Hubbard & Son, agreed to deliver to appellants 3,690 pullets on or about January 17, 1963, which appellants agreed to grow and care for until 20 weeks of age. Under the terms of this agreement, appellants were to receive for their services one cent per bird per week, based on the total of salable birds at 20 weeks of age on March 2, 1963. This written agreement is signed by the appellee, Hubbard & Son, as well as the appellants, and by amendment to their complaint appellants allege "defendants, George Hubbard & Son, never delivered the pullets as called for in Exhibit 'A'."

We conclude that cause of action "B" in appellants' complaint, was good against appellee, Hubbard & Son, on demurrer, and that the chancellor erred in sustaining the Hubbard demurrer to this cause of action.

For their cause of action "C" appellants alleged:

"That on the 2nd day of March, 1963, the Defendants entered into an egg production agreement with the Plaintiffs, a copy of which is attached as Exhibit 'B' and made a part hereof as fully as though set out herein word for word. That under said agreement, Defendants were to furnish 3,561 Hyline chickens as layers on that date; in accordance with said agreement, the Defendants were to furnish feed and the Plaintiffs were to furnish services and collect eggs for which the Defendants were to pay; that in the agreement it was provided that only the feeds of Nutrena Mills, Inc. were to be used; that said layers were to be left with the Plaintiffs until they reached the laying age of eighteen months and

thereafter so long as it was economically sound; that the Plaintiffs were to pay five cents per dozen for medium to large eggs and three cents per dozen for peewee and small eggs; that Plaintiffs fully complied with the agreement, but Defendants breached said agreement by picking up said layers on May 26, 1964, when there was still four months to go on said contract to Plaintiffs' damage for loss of earnings in the amount of $1,214.08, which Plaintiffs should recover from the Defendants."

The amendments to this cause of action add nothing to its validity on demurrer, but Exhibit ''B'' filed with the complaint is entitled ''Dealer-producer egg production agreement.'' Under this agreement, appellee, Hubbard & Son, agreed to furnish to appellants approximately 3,561 twenty weeks old chickens and to supply the chickens with feed, and to pay appellants specified amounts for various size eggs produced by the chickens. Appellants were to feed and care for the chickens and gather, sort, and crate the eggs. This agreement was to remain in effect until the 20 weeks old birds reached the age of 18 months. This agreement contained a provision for continuing the agreement if the birds continued to be productive after they became 18 months of age. This agreement was dated March 2, 1963, and was signed by appellants and the appellee, Hubbard & Son. Appellants allege that appellee breached this contract by picking up the chickens on May 26, 1964, and four months before the expiration of the agreement under the terms of the agreement.

We conclude that cause of action ''C'' in appellants' complaint, was good against appellee, Hubbard & Son, on demurrer, and that the chancellor erred in sustaining the Hubbard demurrer to this cause of action.

For their fourth cause of action ''D'' appellants alleged:

''That in May of 1963, the Defendants entered into an egg production agreement with the Plaintiffs

whereby Defendants were to furnish 2,200 laying hens by August, 1963; that subsequent to the delivery of the 2,200 chickens, the Defendants also delivered to the Plaintiffs 200 additional chickens to be layers; that Plaintiffs fully performed, but the Defendants breached the contract by picking up said layers on May 26, 1964, when there was eight months production to go under the agreement as to laying age; that by the breach of the contract by Defendants, Plaintiffs incurred a loss of earnings and were damaged in the sum of $1,365.60, which they should recover from the Defendants."

And by amendment to this cause of action, appellants alleged:

"The agreement of May, 1963 was an automatic renewal of the agreements attached as Exhibit 'A' and Exhibit 'B' of the original Complaint; the agreement was made on or about May 1, 1963, and the terms were the same as the terms of the written agreements Exhibit 'A' and Exhibit 'B'; the duration of the specific agreement as to 2,200 chickens was to be the same as that under the written agreements in Exhibit 'A' and 'B;' the agreement made on or about May 1, 1963 was an oral automatic renewal of the written agreements listed as Exhibit 'A' and Exhibit 'B'; the 2,200 chickens were delivered on or about May 16, 1963 and were approximately one month old when delivered.

"The 200 additional chickens were delivered on or about June 30, 1963, and were approximately four months old when delivered.

"The damages in the amount of $1,365.00 were computed on a basis of average production of the chickens being 113.8 cases at $1.50 a case or $170.70 per month for a loss of eight months production, based on production average, totaling $1,365.60."

The oral agreement alleged in this fourth cause of action "D" appears to be based on an agreement to renew the two written agreements, Exhibits "A" and "B," sued on under causes of action "B" and "C."

Apparently the oral contract alleged in cause of action "D" was to take effect immediately and during the life of the two written contracts, and was intended to renew the written agreements some several months before they were to expire by their own terms.

In any event, the written egg production agreement as set out in Exhibit "B" under cause of action "C," was to commence when the chickens were twenty weeks old and terminate when they were eighteen months old, a period of more than one year. The performance under this oral contract in cause of action "D" being for a period of more than one year, it falls within the statute of frauds and we conclude that the chancellor correctly sustained the demurrers to this cause of action.

If Nutrena's alleged agreement to guarantee performance by Hubbard was an oral agreement, it falls within the statute of frauds. We find nothing in this entire record to even remotely indicate that the appellee, Nutrena Mills, Inc., ever entered into a written contract agreeing to do anything. A contract by appellants and appellee, Hubbard, and *witnessed* by an agent of Nutrena does not make Nutrena a party to the contract.

We conclude that the chancellor was correct in sustaining the demurrers filed by Nutrena to all four of the causes of action alleged in the complaint.

The decree of the chancellor sustaining the demurrers of appellee, Nutrena Mills, Inc., to all causes of action alleged in the complaint is hereby affirmed, and the cause dismissed as to appellee, Nutrena Mills, Inc.

The decree of the chancellor sustaining the demurrers of appellee, Hubbard & Son, to the first and fourth causes of action "A" and "D" is hereby affirmed.

The decree of the chancellor sustaining the demurrer of appellee, Hubbard & Son, to second and third causes of action on the written contracts in causes "B" and "C" is hereby reversed and this cause remanded for further proceedings toward a trial on the merits in causes of action "B" and "C" alleged against the appellee, Hubbard & Son.

Reversed and remanded.